**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **MICHAEL S. ALEXANDER** | § | |
| | § | |
| **V.** | § | **A-14-CA-654-LY** |
| | § | |
| **SHERIFF GREG HAMILTON,** | § | |
| **DEPUTY PARKER, SGT. HARRISON,** | § | |
| **and DEPUTY BURKHART** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges, as amended, effective December 1, 2002.

Before the Court are Plaintiff's complaint brought pursuant to 42 U.S.C. § 1983 (Document No. 1); Defendants' Motion for Summary Judgment (Document No. 21); and Defendants' Notice of Filing Supplemental Evidence in Support of Defendants' Motion for Summary Judgment (Document No. 22). Plaintiff did not respond to Defendants' Motion for Summary Judgment. Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

# I. BACKGROUND

At the time he filed his civil rights complaint, Plaintiff was incarcerated in the Holliday Unit of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"). Plaintiff was previously confined in the Travis County Correctional Complex ("TCCC") and currently is confined in the Stiles Unit of the TDCJ-CID. Plaintiff's complaint concerns his confinement in the TCCC.

Plaintiff alleges on May 22, 2013, he asked Officer Vidouria when he would be allowed to shower, because he was on lockdown status. According to Plaintiff, Vidouria told him Deputy Parker had stated Plaintiff refused a shower on May 21, 2013. Plaintiff alleges, when Vidouria returned to pick up his lunch tray, he explained to Vidouria he had not had a shower in five days due to retaliation from certain deputies. Plaintiff asserts he asked to speak to a sergeant but was denied. Plaintiff then allegedly asked to have "the other officer" tell him why he believes Plaintiff previously denied his shower. Officer Parker allegedly appeared and denied stating that Plaintiff had denied his shower. According to Plaintiff, Vidouria became agitated with Parker and asked Plaintiff to step in his cell. Plaintiff apparently refused, and Parker allegedly told Plaintiff if he did not get in his cell he would get slammed and tazed by "C-TAC." Plaintiff alleges Parker then placed his hands around Plaintiff's neck to push him into his cell. Plaintiff asserts his right arm and leg were outside of his cell when Parker attempted to push him back in his cell. Plaintiff states he grabbed the cell door below the lock as Vidouria leaned on the door. Plaintiff alleges Parker then kicked him in the knee while Parker choked Plaintiff. According to Plaintiff, he gasped to Parker that "this is on camera," and Parker let go, pushed his panic button, and advised Plaintiff he had done it now. Plaintiff alleges, when the response team arrived, they opened the door, pulled him out of the cell, and picked him up

to slam him.  Plaintiff claims he threw his arms up to brace for a crash and ended up breaking his thumb and tearing a ligament.  Plaintiff claims while he was on the ground with at least three to four officers on top of him he was tazed.  Plaintiff concludes excessive force was used against him during this incident.

Plaintiff further alleges he was harassed in a separate incident on February 7, 2014,[1] by Deputy Burkhart.  According to Plaintiff, Burkhart asked him to sit at the back of the medical department and face a wall to do his breathing treatment for asthma.  Plaintiff alleges Burkhart began to whistle at him and slap his leg as if Plaintiff were a dog.  Plaintiff claims he asked for rank and Burkhart became aggressive and threatened Plaintiff with a disciplinary case.  Plaintiff alleges Burkhart placed him in handcuffs and twisted his arm.  According to Plaintiff, another officer stopped him and he was handcuffed by the other officer and returned to Plaintiff's building.  Plaintiff claims he recognized Burkhart as one of the officers who assaulted him on May 22, 2013.

Plaintiff sues Sheriff Greg Hamilton, Sgt. Harrison, Deputy Parker, and Deputy Burkhart. Plaintiff states he "would like an injunctive relief implimented [sic] as monetary relief for [his] injuries."

Defendants move for summary judgment.  Initially, they assert there is no Sergeant Harrison employed by Travis County and there was no such person employed by Travis County by that name at the time of the events giving rise to this lawsuit.  With regard to Plaintiff's claims against the defendants in their official capacities, they argue Plaintiff has failed to identify any official policy, custom, or practice as having caused his alleged injuries.  To the extent Sheriff Hamilton is sued in his individual capacity, Defendants assert Plaintiff has failed to show personal involvement.

---

[1] Defendants point out the date of this incident is actually February 17, 2014.

Defendants also assert their entitlement to qualified immunity.  Specifically, they argue Plaintiff cannot show Defendants acted with a sufficiently culpable state of mind and that the decision to use force was objectively reasonable.  Defendants explain Parker only used the force necessary to prevent Plaintiff from exiting his cell and assaulting him and the other officer present.  According to Defendants, Parker and the other officer involved in the May 22, 2013 incident tried to de-escalate the situation by talking to Plaintiff, but Plaintiff was halfway out of the cell door while kicking or hitting the inside of the cell door and would not stand down.  Defendants assert Parker was simply reacting to Plaintiff and attempting to keep order in the jail.  Defendants deny Plaintiff was slammed to the ground and point out the video of the incident does not show Plaintiff being slammed. Further, they assert these allegations regarding slamming Plaintiff to the floor are not attributed to any named defendant and note Deputy Burkhart was on vacation at the time of the May incident.

With regard to the February 17, 2014 incident, Defendants explain Burkhart placed Plaintiff in the corner facing the wall in the clinic, because Plaintiff had previously been disciplined for exposing himself to the nurses and masturbating.  According to Burkhart, Plaintiff had time to complete his breathing treatment and was noncompliant when Burkhart ordered him to exit the clinic.  According to Defendants, Burkhart took extra precautions to escort Plaintiff from the clinic including placing restraints on Plaintiff and placing Plaintiff's arm in a position so that Burkhart could engage a wrist lock, if necessary, while Burkhart and another officer switched out wrist restraints.  Defendants argue Burkhart's actions were not deliberately indifferent and were designed to keep order in the jail.  Defendants further argue any injury suffered by Plaintiff was de minimis.

## II. ANALYSIS

A.    <u>Summary Judgment Standard</u>

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  <u>Eason v. Thaler</u>, 73 F.3d 1322, 1325 (5th Cir. 1996); <u>Int'l Shortstop, Inc. v. Rally Inc.</u>, 939 F.2d 1257, 1263 (5th Cir. 1991), <u>cert</u>. <u>denied</u>, 502 U.S. 1059 (1992).  When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial.  <u>Ray v. Tandem Computers, Inc.</u>, 63 F.3d 429, 433 (5th Cir. 1995);  FED. R. CIV. P. 56.[2]

Both movants and non-movants bear burdens of proof in the summary judgment process. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).  The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense.  <u>Id</u>. at 322.  In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses.  <u>Id</u>. at 323-24.  At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial."  <u>Id</u>. at 324.  The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations.  <u>Tubacex v. M/V Risan</u>, 45 F.3d 951, 954 (5th Cir. 1995).

_____

[2]Effective December 1, 2010, Rule 56 was amended. Although there is a slight language change and a change in the designation of subsections, the legal standard remains the same. <u>See</u> FED. R. CIV. P. 56(a) (eff. Dec.1, 2010) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party.  The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." James v. Sadler, 909 F.2d 834, 837 (5th Cir. 1990) (citing Matsushita, 475 U.S. at 586)).  To the extent facts are undisputed, a Court may resolve the case as a matter of law.  Blackwell v. Barton, 34 F.3d 298, 301 (5th Cir. 1994).

B.    Personal Involvement

Plaintiff makes clear his claims are directed at Sheriff Hamilton in his supervisory capacity. However, supervisory officials cannot be held vicariously liable under § 1983 solely on the basis of their employer-employee relationship.  Monell v. Dep't of Soc. Serv., 436 U.S. 658, 693 (1978); Lozano v. Smith, 718 F.2d 756, 768 (5th Cir. 1983).  If a supervisor is not personally involved in the alleged constitutional deprivation, he or she may only be held liable if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.  Thompkins v. Belt, 828 F.2d 298, 303–04 (5th Cir. 1987).  Plaintiff has failed to allege a valid constitutional claim against Defendant Hamilton.

C.    Retaliation

Construing Plaintiff's allegations liberally, he may be asserting a claim of retaliation.  In order to state a valid claim for retaliation under § 1983, a prisoner must allege the following: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for the exercise of that right; (3) a retaliatory adverse act; and (4) causation.  Jones v. Greninger, 188 F.3d 322,

6

324-325 (5th Cir. 1999). The plaintiff must establish that "but for the retaliatory motive the complained of incident ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). Mere conclusory statements that retaliation occurred are not sufficient; "The inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" Id. (quoting Jackson, 864 F.2d at 1143 n.6). Plaintiff's allegations of retaliation are conclusory and fail to allege that but for the alleged retaliatory motive, he would not have been disciplined.

> D.   Shower

Plaintiff claims he was denied a shower for five days. As a pretrial detainee, Plaintiff's constitutional claims arise under the Due Process Clause of the Fourteenth Amendment, which, like the Eighth Amendment, places a duty on the State to protect against harm to persons in its confinement. See Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996). In this type of case, where the inmate alleges an "episodic act or omission" by jail officials, Plaintiff must show that the official acted with deliberate indifference to his constitutional rights. Id., at 636 (citing Farmer v. Brennan, 511 U.S. 825 (1994)).

"Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. In applying this standard, the courts have held that "the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing Farmer, 511 U.S. at 837). "Under exceptional circumstances, a prison official's

7

knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." Id. (citing Farmer, 511 U.S. at 842 & n .8).

Going without a shower for five days on one occasion does not show deliberate indifference to Plaintiff's basic human needs or constitute a constitutional violation.  See Hamilton v. Lyons, 74 F.3d 99, 106 (5th Cir. 1996) (pretrial detainee "denied visitation, telephone access, recreation, mail, legal materials, sheets, and showers for a three-day period" could not show a constitutional violation); Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996) (pretrial detainee who had to "endure the stench of [his] own feces and urine' for ... four days" because of an overflowed toilet in his cell had not suffered a constitutional violation).  Accordingly, Plaintiff has failed to establish a constitutional violation.

E.    Excessive Force

Plaintiff alleges excessive force was used against him on two occasions at the TCCC.  A pretrial detainee has a right not to be subjected to excessive use of force.  See Hudson v. McMillian, 503 U.S. 1, 5–10 (1992); Valencia v. Wiggins, 981 F.2d 1440, 1446 (5th Cir. 1993).  The question is whether the force is applied in a good faith effort to restore discipline or maliciously and sadistically for the very purpose of causing harm.  Valencia, 981 F.2d at 1443–45.  There are five factors to consider in answering this question, including the extent of the injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response.  Id. at 1446 n. 29.

8

1.    *May 22, 2013 Incident*

With respect to the May 22, 2013 incident, the summary judgment evidence shows Plaintiff tried to exit his cell without permission.  The videotape shows Defendant Parker attempting to prevent Plaintiff from exiting his cell.  Plaintiff admits he was partially out of his cell when Parker attempted to push him back.  Plaintiff's actions plainly presented a threat to the security of the jail. Plaintiff's repeated refusals to go back in his cell and attempt to exit resulted in the use of force of which he complains.  The videotape shows Defendant Parker was acting in a good faith effort to restore the discipline being breached by Plaintiff's conduct.  When Plaintiff did not comply or respond to Parker's attempt to return Plaintiff to his cell, Parker pushed his panic button, stepped back, and the response team took Plaintiff to the ground.  There is no evidence Parker acted maliciously or sadistically for the very purpose of causing harm.  In addition, Plaintiff does not allege Defendant Parker injured him.  Instead, Plaintiff alleges he was injured in the take down by the response team.  None of the members of the team are named as defendants in this action.

2.    *February 17, 2014 Incident*

With respect to the February 17, 2014 incident, the summary judgment evidence shows Defendant Burkhart placed Plaintiff in the corner facing the wall in the clinic, because Plaintiff had previously been disciplined for exposing himself to the nurses and masturbating.  After Plaintiff had time to finish his breathing treatment, Defendant Burkhart took steps to ensure Plaintiff exited the clinic in an orderly fashion.  There is no evidence Plaintiff used excessive force against Plaintiff or that Plaintiff suffered more than a de minimis injury.

F.      County Liability

Plaintiff's claims against the defendants in their official capacities are construed as claims against Travis County.  Bennett v. Pippin, 74 F.3d 578, 584-85 (5th Cir. 1996).  However, a political subdivision cannot be held responsible for a deprivation of a constitutional right merely because it employs a tortfeasor; in other words a local government unit cannot be held responsible for civil rights violations under the theory of respondeat superior.  Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992).  The standard for holding a local government unit responsible under § 1983 requires that there be a custom or policy that caused the plaintiff to be subjected to the deprivation of a constitutional right.  Id;  Collins v. City of Harker Heights, Tex., 916 F.2d 284, 286 (5th Cir. 1990), aff'd, 503 U.S. 115 (1992).  Thus, Travis County would violate an individual's rights only through implementation of a formally declared policy, such as direct orders or promulgations or through informal acceptance of a course of action by its employees based upon custom or usage.  Bennett v. City of Slidell, 728 F.2d 762, 768 (5th Cir. 1984), cert. denied, 472 U.S. 1016 (1985).  A single decision made by an authorized governmental decisionmaker to implement a particular course of action represents an act of official government "policy." Pembaur v. Cincinnati, 475 U.S. 469, 481 (1986).

In this case, Plaintiff failed to show that a municipal policy was the moving force behind the alleged constitutional violations.  Plaintiff failed to identify a policy, practice or custom of Travis County that caused a deprivation of his constitutional rights.  Accordingly, summary judgment is warranted with regard to Plaintiff's claims brought against the defendants in their official capacities.

10

G.    Defendants' Counterclaim

Defendants Burkhart and Parker include a counterclaim for attorney's fees pursuant to 42 U.S.C. § 1988 in their answers.  However, they did not move for summary judgment on the counterclaim.  As such, the Court cannot render a final judgment until the counterclaim is resolved. In a suit to enforce § 1983, the court may, in its discretion, grant the prevailing party reasonable attorney's fees and related expenses. 42 U.S.C. § 1988(b); see Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd., 919 F.2d 374, 380 (5th Cir. 1990).  The court may award attorney's fees to prevailing defendants, in its discretion, if it determines that the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Chrisriansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978); Turton v. Garland Indep. Sch. Dist., 733 F. Supp. 1113, 1117 (N.D. Tex.1990) (Fitzwater, J.).  As it is unlikely that the Court will award such relief in this case, the defendants may wish to withdraw the counterclaim to enable the court to render a final judgment.  If they do not do so, a final judgment will not be able to be rendered until the counterclaim is resolved by trial.

## III.  RECOMMENDATION

The undersigned recommends that the District Court grant Defendants' Motion for Summary Judgment (Dkt. #21).  If the counterclaim for attorney's fees is not withdrawn by Defendants Burkhart and Parker, a trial should be scheduled.

## IV. OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are

being made.  The District Court need not consider frivolous, conclusive, or general objections.

Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

      A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See 28 U.S.C. § 636(b)(1)(C);  Thomas v. Arn, 474 U.S. 140, 150-153 (1985);  Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415, 1428-29 (5th Cir. en banc, 1996).

      To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

      **SIGNED** on January 23, 2015.


_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE

12